PHILLIP A. TALBERT
United States Attorney
BRIAN W. ENOS
Assistant United States Attorney
2500 Tulare Street, Suite 4401
Fresno, CA 93721
Telephone: (559) 497-4000
Facsimile: (559) 497-4099

Attorneys for Plaintiff
United States of America

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>JONATHAN JAMES RODRIGUEZ,<br><br>    Defendant. | Case No. 1:20-cr-00122 JLT/SKO<br><br>**THE UNITED STATES' SENTENCING MEMORANDUM AND FORMAL RESPONSE TO PRESENTENCE INVESTIGATION REPORT**<br><br>Date: February 27, 2023<br>Time: 10:00 a.m.<br>Ctrm: 4 |

## I.    INTRODUCTION

On July 30, 2020, the grand jury returned an indictment against defendant Jonathan James Rodriguez ("Rodriguez"), charging him with a single count of Receipt and Distribution of Material Involving the Sexual Exploitation of Minors, in violation of Title 18, United States Code, Section 2252(a)(2). Dkt. 1. On February 25, 2021, the grand jury returned a superseding indictment against Rodriguez, charging him with the same count. Dkt. 20.

On September 23, 2022, Rodriguez pleaded guilty to the count charged in open court. Dkt. 45. Rodriguez's guilty plea followed the parties' signing and filing a Rule 11(c) plea agreement on August 19, 2022. Dkt. 42. At the change of plea hearing, the court scheduled sentencing to take place on January 13, 2023. Dkt. 45. Pursuant to the parties' December 30, 2022 request, the court continued the sentencing hearing to February 27, 2023. Dkts. 50 and 51.

After interviewing Rodriguez, U.S. Probation prepared a draft Presentence Investigation Report ("PSR") on December 6, 2022, and filed its final PSR on December 22, 2022 after considering comments by the parties. Dkts. 48 and 49. As specified below and as set forth within the plea agreement, the parties agreed to the application of an aggregate thirty-three (**33**) levels of sentencing enhancements, with the "government . . . free to argue for application of an [additional] two-level increase for use of a computer (U.S.S.G. § 2G2.2(b)(6))." Dkt. 42, 9:9-24. Accordingly, the government maintains that the applicable guidelines range in this case is an aggregate level thirty-five (**35**). In light of Rodriguez's applicable Criminal History Category (I) (PSR, ¶ 49), his applicable guidelines range is therefore 168-210 months. Within the parties' plea agreement, however, the government agreed that it would "recommend that the defendant be sentenced to a term of imprisonment of no more than 180 months." Dkt. 42, 9:26-28. Accordingly, the government believes Rodriguez should be sentenced to a term of imprisonment within the 168-180 month range.

For reasons that remain unclear, U.S. Probation maintains an additional four-levels of sentencing enhancements should be applied, for an aggregate level of thirty-nine (**39**).[1] In light of the below-described facts and legal authority, however, the government disagrees and requests the court to apply an aggregate thirty-five (**35**) levels of enhancements when determining its sentencing calculus in this case.

## II.     APPLICABLE GUIDELINES CALCULATIONS

The government identifies applicable Guidelines calculations regarding this case as follows:

### A.    The Parties' and U.S. Probation's Agreed Sentencing Calculations

The government notes that, other than: (A) the parties' agreeing to argue the extent the two (**2**) level "use of computer" sentencing enhancement (§ 2G2.2(b)(6)) should be applied at sentencing, and (B) two below-referenced exceptions, the PSR reflects U.S. Probation's agreement with respect to the numerical sentencing calculations set forth within the parties' Rule 11(c) plea agreement filed on August 19, 2022. Dkt. 42.

---

[1] Contrary to the parties' plea agreement, U.S. Probation claims that the two-level (**2**) "pre-pubescent minors" enhancement pursuant to § 2G2.2(b)(2), as well as an additional two-level (**2**) "vulnerable victims" enhancement pursuant to § 3A1.1(b)(1) should *likewise* be applied to Rodriguez's sentencing calculus.

The parties' and U.S. Probation's agreed sentencing calculations include:

1. A base offense level of twenty-two (**22**) (§ 2G2.2(a)(2));

2. *Plus*:

    a. five (**5**) levels because the case involved defendant's distribution to a minor (§ 2G2.2(b)(3)(C));

    b. four (**4**) levels because the offense involved material that portrays the sexual abuse or exploitation of an infant or toddler (§ 2G2.2(b)(4)(B))[2]; and

    c. five (**5**) levels because the offense involved 600 or more images. (§ 2G2.2(b)(7)(D)). Plea Agreement, para. VI(b); Draft PSR, paras. 27-41.

    *Minus*:

    d. Three (**3**) levels pursuant to defendant's acceptance of responsibility (§ 3E1.1 – Plea Agreement, paras. III(b)(2) and VI(b); PSR, paras. 39 and 40.

Accordingly, the parties and U.S. Probation universally agree to an aggregate of thirty-three (**33**) levels of sentencing enhancements.

**B.    Parties' Disputed Calculations**

Within the parties' plea agreement, the parties agree that the government is "free to argue" for the application of the two (**2**) level "use of computer" enhancement set forth within § 2G2.2(b)(6). Dkt. 42, at 9:22-23. The PSR likewise applies this additional enhancement. PSR, at ¶ 32. The government agrees with U.S. Probation that it properly applies in this case.

As this sentencing enhancement's plain language provides, it should be applied where, as here, "the offense involved the use of a computer or an interactive computer service for the possession, transmission, receipt, or distribution of the material." Here, Rodriguez's Toshiba laptop computer was found to have contained "534 videos depicting children under the age of 14 engaged in sexual conduct" and his Discord account, accessed electronically through a computer device, reveals his additional commission of various acts sexually exploiting children. PSR, ¶¶ 11-20. Accordingly, the two (2) level "use of computer" enhancement (§ 2G2.2(b)(6)) plainly applies, increasing Rodriguez's final sentencing

---

[2] While U.S. Probation likewise applied a four (4) level enhancement pursuant to § 2G2.2(b)(4), it applied subdivision (A) (and not (B)) in describing Rodriguez's child pornography collection to include depictions of "sadistic or masochistic conduct or other depictions of violence."

THE UNITED STATES' SENTENCING MEMORANDUM AND FORMAL RESPONSE TO PRESENTENCE INVESTIGATION REPORT

3

guidelines level to thirty-five (**35**).

####     C.      U.S. Probation's Calculations at Variance with the Parties' Plea Agreement

As described below, U.S. Probation applies two additional sentencing enhancements, without explaining how their application carries legal support. Accordingly, and for the reasons set forth below, neither should be applied.

            1.      Rodriguez's Sentencing Calculations Should Include the Four-Level "Sexual Abuse or Exploitation of Infant or Toddler" Enhancement Under § 2G2.2(b)(4)(B) and *Not Both* the Four-Level "Sado-Masochistic Conduct" Enhancement Under § 2G2.2(b)(4)(A) Coupled with the Two-Level "Vulnerable Victim" Enhancement Under § 3A1.1(b)(1)

Within the factual basis of the plea agreement, Rodriguez acknowledges that his child pornography collection included "depictions of sexual abuse of minors and/or toddlers." Dkt. 42, page A-1:15-16. The sampling Rodriguez's child pornography described in the PSR likewise describes "toddlers" being sexually abused. PSR, page 5, Images 4 and 9. Accordingly, the "sexual abuse or exploitation of infant or toddler" enhancement pursuant to § 2G2.2(b)(4)(B) clearly applies.

Section 2G2.2(b)(4)(B) is new to the U.S. Sentencing Guidelines within the last decade. To explain, beginning with the 2016 edition of the United States Sentencing Guidelines, application of the four-level enhancement set forth in § 2G2.2(b)(4) was broadened from originally applying to fact patterns where "the offense involved material that portrays sadistic or masochistic conduct or other depictions of violence" to those that encompassed both offenses involving "material that portrays **(A)** sadistic or masochistic conduct or other depictions of violence; **or (B) sexual abuse or exploitation of an infant or toddler**." (broadening language in **bold**). Application Note 4 to § 2G2.2 provides "[i]f subsection (b)(4)(B) applies, do not apply § 3A1.1(b)." Accordingly, if the "infant or toddler" enhancement applies, this application note directs parties to not likewise apply the vulnerable victim enhancement under § 3A1.1(b).

Here, there is no dispute that Mr. Rodriguez's child pornography collection included depictions of "the sexual abuse or exploitation of an infant or toddler." The parties agree to the application of this **(4)** four-level enhancement within the plea agreement (¶ VI(B)(2)), and the PSR identifies multiple videos from Rodriguez's child pornography collection that involved an infant or toddler being sexually

1  abused and exploited. PSR, ¶¶ 11-20, 34. Accordingly, § 2G2.2(b)(4)(B) properly applies in this case,
2  and as a result § 3A1.1(b)(1) should not be likewise applied. To find otherwise would result in
3  improperly reading the new, broadening language out of the § 2G2.2(b)(4) enhancement. *See, e.g.,*
4  *United States v. Goodbear*, 676 F.3d 904, 910 (9th Cir. 2012) (Ninth Circuit applies rules of statutory
5  construction when interpreting Sentencing Guidelines); *United States v. Lopez*, 998 F.3d 431, 440 (9th
6  Cir. 2021) (canon against surplusage requires a court, if possible, to give effect to each word and clause
7  in a statute when interpreting its content and application).[3]

          2.       Application of the Two-Level "Pre-Pubescent Minor" Enhancement Under § 2G2.2(b)(2)

10  Contrary to the parties' plea agreement, U.S. Probation likewise applies the two **(2)** level
11  enhancement pursuant to defendant's receipt of sexually explicit images of prepubescent minors and/or
12  children under twelve (12) years of age (§2G2.2(b)(2)). For reasons similar to the above, the
13  government believes it improper to apply this enhancement in this case, because (1) the parties already
14  apply the four (4) level "infant or toddler" enhancement, and (2) the case law is thus far unclear with
15  respect to it would be improper to apply both the (b)(2) and (b)(4)(B) enhancements as "double
16  counting" enhancements that would account for the "same wrong."

18  Generally, the Ninth Circuit holds that it is *not* improper "double counting" for district courts to
19  apply both the § 2G2.2(b)(2) "pre-pubescent minor" enhancement at the same time as the § 2G2.2(b)(4)
20  "sadistic or masochistic conduct" enhancement. *See, e.g., United States v. Kiefer*, 760 F.3d 926, 932-33
21  (9th Cir. 2014) (finding the district court's application of both enhancements "did not result in double
22  counting because they account for two 'distinct wrongs'").[4] As demonstrated above, however, the
23  "sadistic or masochistic conduct" enhancement does not properly apply here. Instead, the
24  § 2G2.2(b)(4)(B) "sexual abuse or exploitation of an infant or toddlers" enhancement created by the

---

[3] The government addressed this issue with U.S. Probation with its informal response to the draft PSR. In response, U.S. Probation merely stated without explanation that "USSG § 2G2.2(b)(4)(B) was not applied; however, USSG 2G2.2(b)(4)(A) was used" and therefore the vulnerable victim enhancement likewise applied because it captured a different harm. U.S. Probation provided no commentary with respect to why it found (b)(4)(B) inapplicable, or provide any authority with respect to its reading (b)(4) as if subdivision (B) to the same did not exist. Dkt. 49-2.

[4] *See also United States v. Hechler*, 588 Fed.Appx. 603 at *2 (9th Cir. 2014).

Sentencing Commission in 2016 properly applies, and the government could not locate a case addressing the more direct and current issue regarding the extent this enhancement could be applied in addition to the "pre-pubescent minors" enhancement without it being considered as impermissible double counting.  While this may ultimately be the case, the caselaw in this regard remains undeveloped.  Since this issue remains unclear, the government maintains that the two (**2**) level "pre-pubescent minors" enhancement was properly omitted from the parties' plea agreement, particularly in light of the fact that the parties agreed to apply the doubly-impactful four (**4**) level "infants or toddlers" enhancement.[5]

The government likewise remains mindful that the Ninth Circuit requires prosecutors to honor the terms of a negotiated plea agreement with a defendant.  *United States v. Alcala Sanchez*, 666 F.3d 571, 575-577 (9th Cir. 2012).  The government honors the terms of the plea agreement negotiated in this case, believes in the propriety of its terms, and will continue to do so at sentencing.

### D.  The Facts of this Case Call for Defendant to be Sentenced to a Term of Imprisonment up to 180 Months

As noted in the PSR and case discovery, Rodriguez's actions sexually exploiting children are both widespread and grim.  His child pornography collection includes many hundreds of videos of children, collected over a span of several years, as young as infants and toddlers suffering various acts of sexual abuse by both adult males and dogs.  This collection includes minor victims, sometimes babies, in emotional and physical distress and at times crying. PSR, § § 11-20.  Rodriguez was also found to have been chatting through Discord with someone who represented herself as a 12 year-old in Australia, and who Rodriguez both asked sexually explicit questions and threatened to "rape her a** until [she] pass[ed] out" when she failed to answer them to his liking.  In short, Rodriguez's actions reveal him as committing acts far beyond that of a passive collector, but instead as a clear and present danger to children.

---

[5] The government likewise addressed this issue with U.S. Probation within its informal responses to the draft PSR. In response, U.S. Probation again merely stated, without explanation, that it thought "(b)(4)(A)" applied, and "not . . . (b)(4)(B)" and therefore (b)(2) applied because it "capture[d] different harms and different images/videos."  Dkt. 49-2.

In mitigation, Rodriguez has no prior criminal history, and reports a difficult relationship with his father, being the victim of "sexual abuse for many years from an older cousin," and self-diagnoses as suffering from depression. PSR, ¶¶ 55 and 63. Accordingly, and when comparing Rodriguez's conduct with prior defendants, a sentence up to a mid-level 180-month term of imprisonment is appropriate.

### III. THE SENTENCING GUIDELINES AND § 3553(A) FACTORS SUGGEST THE PARAMETERS OF A REASONABLE SENTENCE

Whereas the Sentencing Guidelines were once "mandatory", they must now be consulted in an "advisory" capacity in that a sentencing court now must also consider factors outlined at 18 U.S.C. § 3553(a). Those factors include:

(1) The nature and circumstances of the offense and the history and characteristics of the defendant;

(2) The need for the sentence imposed

   (A) To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

   (B) To afford adequate deterrence to criminal conduct;

   (C) To protect the public from further crimes of the defendant; and

   (D) To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) The kinds of sentences available;

(4) The kinds of sentence and the sentencing range established for

   (A) The applicable category of offense committed by the applicable category of defendant as set forth in the Guidelines issued by the Sentencing Commission…

(5) Any pertinent policy statement -

   (A) Issued by the Sentencing Commission . . .

(6) The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) The need to provide restitution to any victims of the offense.

Here, consideration of the factors identified within 18 U.S.C. § 3553(a) supports a term of imprisonment up to 180 months. Broadly, subsections (3) and (4) provide that a court "shall consider . . . the kinds of sentences available" and "the sentencing range established for (A) the applicable category

of offense committed by the applicable category of defendant, as set forth in the guidelines." Subsection (5) requires a court to consider "any pertinent policy statement ... issued by the Sentencing Commission."

Regarding this case, perhaps the most impactful factors relevant to the court's analysis in determining a reasonable sentence for defendant are subsections (2) and (6) of 18 U.S.C. § 3553(a). Subsection (2) requires the court to consider the need to "reflect the seriousness of the offense", "afford adequate deterrence" and "protect the public." In the case of child exploitation prosecutions, the government has a compelling interest to protect children from those who exploit them, particularly those who have sexually exploited children for decades. As justification for the imposition of significant sentences in child exploitation offenses, the Supreme Court has long held "the prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance." New York v. Ferber, 458 U.S. 747, 757 (1982).

Here, Rodriguez's vast collection of child pornography videos collected over a span of several years, coupled with his sexually aggressive and threatening behavior toward minor girls online, demonstrate both the seriousness of this crime, as well as his steadfast determination to sexually exploit minors. The nature of this child pornography involved minor girls and boys as young as infants suffering acts of vaginal and anal penetration and acts of oral sex with unidentified adults, as well as acts of bestiality and bondage.

Mitigating factors identified in this case are candidly a mixed bag. Rodriguez reports suffering from depression and being sexually abused by a cousin when he was a child. Conversely, however, Rodriguez has a good relationship with his mother, with whom he has long "felt love and support." PSR, ¶¶ 54-59.

Subsection (6) addresses the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." This makes sense, because imposing a sentence on defendant that is heavier than this court has imposed on those who the government could prove committed similar conduct is unfair to defendant, and a sentence imposed on this defendant that conversely is lighter than other similarly situated defendants is unfair them. In the undersigned's experience, prior defendants who have committed crimes similar to defendant over

similar durations and with similar sets of aggravating and mitigating circumstances are sentenced to incarceration terms at or near the middle of their applicable sentencing ranges. Accordingly, the government asks the court to sentence defendant to a guidelines term of imprisonment up to 180 months.

## IV.     RESTITUTION

"[T]he court shall order restitution" pursuant to convictions of crimes including those committed in violation of 18 U.S.C. § 2252(a). 18 U.S.C. § 2259(a). "The order of restitution … shall direct the defendant to pay the victim (through the appropriate court mechanism) the full amount of the victim's losses." 18 U.S.C. § 2259(b)(1). The issuance of a restitution order under Section 2259 is indeed mandatory. 18 U.S.C. § 2259(b)(4)(A).

The term "full amount of the victim's losses" includes any costs incurred by the victim for:

(A) medical services relating to physical, psychiatric, or psychological care;

(B) physical and occupational therapy or rehabilitation;

(C) necessary transportation, temporary housing, and child care expenses;

(D) lost income;

(E) reasonable attorneys' fees, as well as other costs incurred; and

(F) any other losses incurred by the victim.

18 U.S.C. § 2259(b)(3)(A) through (F).

Federal courts may order restitution to the extent authorized by statute. United States v. Kennedy, 643 F.3d 1251, 1260 (9th Cir. 2011) (citing United States v. Gossi, 608 F.3d 574, 577 (9th Cir. 2010)). Section 2259 is the statutory mechanism that allows for a restitution order regarding this action's known victim who made a restitution claim, and regarding those losses and other harms caused by the offense of conviction. Paroline v. United States, 134 S.Ct. 1710, 1720 (2014). The burden is on the government to establish, by a preponderance of the evidence, the existence of a causal connection between the victim's losses and the defendant's conduct in order to meet the requirements of § 2259. Kennedy, 643 F.3d at 1262. If it is impossible to trace a particular amount of a victim's claimed losses to an individual defendant, then sentencing court applying § 2259 should order a restitution amount comporting with defendant's relative role in the causal process that underlay the victim's general losses. Paroline, 134 S.Ct. at 1715.

In addition, in United States v. Galan, 804 F.3d 1287 (9th Cir. 2015), the court held that a person who participates in the distribution, receipt or possession of child pornography cannot be required to pay restitution for losses caused by the original abuser's actions; instead, the losses must be disaggregated. Id. at 1290-91; See also United States v. Grovo, 826 F.3d 1207, 1222 (9th Cir. 2016). The Galan court provided examples of factors that may affect the apportionment, or disaggregation, in a particular case: "egregiousness of the original abuse; how a victim can (or does) cope with [the] . . . abuse when distribution of images does not follow; and the particular victim's own reactions to the various traumas to which the victim has been subjected." Galan, 804 F.3d at 1291. The court further noted that "precision is neither expected nor required" in apportioning the losses, and that "the ultimate question will be a mix of 'discretion and estimation.'" Id. (quoting Paroline v. United States, 134 S.Ct. 1710, 1729 (2014)).

Notably, as of December 7, 2018 and pursuant to the enactment of the Amy, Vicky, and Andy Child Pornography Victim Assistant Act ("AVAA"), certain amendments to Section 2259's restitution provisions took effect. These amendments include the requirement that a court impose a minimum restitution award of "no less than $3,000" regarding claims made by minor victims of child pornography offenses. 18 U.S.C. § 2259(b)(2)(B). Because defendant's offense conduct took place (from January 2014) through January 2020, the amendments apply in this case.

Within a "Restitution Spreadsheet" provided to U.S. Probation after defendant's guilty plea (which U.S. Probation provided to the court as an attachment to the PSR), the government notified U.S. Probation of it's receiving the following restitution requests from known victims in this case[6]:

(1) On June 29, 2001, the government received a request from the victim of the "Sweet White Sugar" child pornography series, in which this victim seeks "$5,000" in restitution from defendant;

(2) On October 4, 2022, the government received a request from the victim of the "Vicky" child pornography series, in which this victim seeks "$3,000" in restitution (the statutory minimum) from defendant. On December 9, 2022, the government received a detailed, supplemental presentation from representatives of "Vicky", in which it provided

---

[6] As noted herein, representatives of the "Vicky" and "AprilBlonde" victims recently sent updated restitution requests, based on somewhat voluminous additional records. The government will provide these materials to defense counsel and U.S. Probation soon after the filing of this sentencing brief.

THE UNITED STATES' SENTENCING MEMORANDUM AND FORMAL RESPONSE TO PRESENTENCE INVESTIGATION REPORT

10

additional materials in support of an increased request for "$10,000" in restitution from defendant;

(3) On October 4, 2022, the government received a request from the victim of the "AprilBlonde" child pornography series, in which this victim sought "$3,000" in restitution from defendant. On January 23, 2023, the government received a detailed, supplemental presentation from representatives of "AprilBlonde", in which it provided additional materials in support of an increased request for "$5,000" in restitution from defendant; and

(4) On October 4, 2022, the government received a separate presentation from representatives for the child pornography victim "Tara" (itself dated October 13, 2021) seeking $138,816.27 in restitution.

In light of the above requests, the government seeks $5,000 in restitution on behalf of "Sweet White Sugar" and "AprilBlonde" (and each of them), $10,000 in restitution on behalf of "Vicky", and $138,816.27 on behalf of "Tara", for an aggregate restitution award of $158,816.27.[7] Each victim claiming restitution warrants this court's individualized consideration, and deserves the same consideration whether the only claimant or one of many. The potential aggregate cost to defendant due to the mass volume of his child pornography collection and commensurate large number of children he victimized is not a factor to be considered. 18 U.S.C. § 2259(b)(4)(B)(i) (restitution order cannot be declined in light of defendant's economic circumstances).

The government is likewise aware of this district's prior restitution awards issued in other child pornography cases. If the court is not inclined to order restitution for any of the above victims at or near the requested amounts, the government asks the court to issue restitution awards consistent with those issued in prior cases in this courthouse involving similar conduct and similarly-situated victims. If the court determines that it needs additional information prior to ruling on any of the above restitution requests, then the government asks that a restitution hearing be set within 90 days of the sentencing hearing, without affecting any other component of the court's sentence and judgment, as authorized by 18 U.S.C. § 3664(d)(5).

---

[7] The government acknowledges that "Tara's" restitution request far exceeds those of the other restitution claimants in this case. On this end, the government recently contacted Tara's representative to obtain the information she would like me to present to the court on Tara's behalf. Rodriguez's child pornography collection included: (1) 26 videos of "Sweet White Sugar", (2) 13 videos of "Vicky", (3) 8 videos of "AprilBlonde", and (4) 6 videos of "Tara."

THE UNITED STATES' SENTENCING MEMORANDUM AND FORMAL RESPONSE TO PRESENTENCE INVESTIGATION REPORT

11

## V. CONCLUSION

Based on the evidence unearthed in this case and applicable legal authority, the government respectfully requests that the Court sentence defendant to a term of imprisonment up to 180 months. The government further requests the court to impose a special assessment in the amount of $5,100 and award restitution as set forth above.

Dated: February 15, 2023

PHILLIP A. TALBERT
United States Attorney

By: /s/ Brian W. Enos
Brian W. Enos
Assistant United States Attorney